# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **Anthony Viola,** | ) | CASE NO. 1:21 CV 1196 |
| | ) | |
| Plaintiff, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| **Cuyahoga County Land Bank,** *et al.*, | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

Before the Court are Defendants' Motions to Dismiss (Doc. Nos. 12, 20, 22, 23, 26), the Federal Defendants' Motion to Declare Plaintiff a Vexatious Litigator (Doc. No. 24), Plaintiff's Motion to Dismiss (Doc. No. 28) and Plaintiff's Motion to Hold in Abeyance Defendant's Motion to Declare Plaintiff to be a Vexatious Litigator (Doc. No. 29). *Pro se* Plaintiff Anthony Viola filed this action against the Cuyahoga County Land Bank (nka the Cuyahoga County Land Utilization Corp.), the Federal Bureau of Investigation ("FBI"), the United States Department of Justice ("DOJ"), Master Commissioner Donald J. DeSanto ("DeSanto"), US Bank Home Mortgage ("US Bank"), the Federal National Mortgage Association ("Federal National Mortgage"), and former Assistant United States Attorney Mark Bennet. In the Complaint, Plaintiff challenges the way in which payment of restitution is credited in his federal criminal case and contends he should have received money from the

1

proceeds from the sale of his house in a foreclosure action. He raises six causes of action and asks this Court to quiet title to the foreclosed property to him under 28 U.S.C. § 2409.

**BACKGROUND**

Plaintiff and six co-defendants were indicted in this federal court in 2009 on multiple counts of wire fraud and conspiracy to commit wire fraud. *See United States v. Viola*, No. 1:08 cr 506 (N.D. Ohio Apr. 1, 2011). Shortly thereafter, the United States recorded a Notice of Lis Pendens with the Cuyahoga County Recorder indicating there were forfeiture allegations against the property owned by Plaintiff at 3048 Meadowbrook Blvd., in Cleveland Heights. Ohio. Plaintiff was convicted and sentenced in January 2012 to fifteen months for each of the wire fraud counts and sixty months for each of the conspiracy counts, all to run concurrently. *Id.* In addition, he was ordered to pay restitution jointly and severally with his co-defendants in the amount of $ 2,649,865.00. (Fed. Defendants' Mot. To Dismiss, Doc. 23-1 at PageID #:210). His criminal conviction was upheld on appeal. (Doc. 23-1 at PageID #:210).

Plaintiff and his co-defendants were also charged in state court with charges pertaining to the same incidents and involving the same victims. Plaintiff was acquitted. His co-defendants, however, were convicted and ordered to pay restitution as part of that sentence. He claims one of his co-defendants offered to pay $ 1,000,000.00 toward satisfaction of the restitution imposed in his state court sentence. Plaintiff contends that this amount should also be credited against the restitution ordered to be paid in the co-defendants' federal case because the victims are the same in both cases. (Doc. No. 1 at PageID #: 6). Because restitution in the federal case was assessed jointly and severally, Plaintiff's restitution obligation would be reduced if his co-defendants' state restitution payments were credited.

2

In February 2012, the DOJ filed a lien for the federal fine and/or restitution against the Meadowbrook Blvd. property. This lien was second to the mortgage on the property held by U.S. Bank. U.S. Bank filed a foreclosure action against the property in 2016 in the Cuyahoga County Court of Common Pleas, Case No. CV-16-859482. The United States removed the foreclosure action to federal court. *See U.S. Bank N.A. v. Viola*, No. 1:16 CV 969 (N.D. Ohio Sept. 13, 2017) (Gwin, J.) ("Foreclosure Action"). United States District Judge James S. Gwin granted summary judgment in favor of U.S. Bank on the foreclosure on September 13, 2017.

U.S. Bank then moved to sell the property to satisfy the judgment. Judge Gwin granted the Motion and appointed Master Commissioner Donald J. DeSanto to oversee the sale including "obtaining appraisals of the property by three State of Ohio licensed or certified appraisers, publishing notice of the sale, conducting the sale, and reporting the outcome to the Court." *Id.* (Foreclosure Action, Doc. No. 86, PageID #: 610). Because the United States had a lien on the property, Plaintiff filed a Motion to Compel the United States to provide him with information about his restitution order from his criminal conviction. *Id.* (Foreclosure Action, Doc. No. 89). Judge Gwin denied that Motion on November 27, 2017. *Id.* (Foreclosure Action, Doc. No. 92). Plaintiff appealed that decision to the United States Sixth Circuit Court of Appeals. The Sixth Circuit affirmed Judge Gwin's decision, stating:

> The district court did not abuse its discretion in denying the motion to compel because Viola's request for a forensic accounting of all restitution payments made by all parties in both his state and federal criminal proceedings was not relevant in determining whether the government had a valid lien, the priority of said lien, and the amount of debt owed. *See Bd. of Trs. v. Moore*, 800 F.3d 214, 223 (6th Cir. 2015). Additionally, Viola's argument that payments by his co-defendants and the recoveries from fraud settlements between banks and the United States were not credited to his restitution balance is not properly before the court because the proper time for challenging a restitution order is on direct appeal. *See Balter v. Martinez*, 477 F. App'x 873, 875 (3d Cir. 2012) (*per curiam*).

*U.S. Bank N.A. v. Viola*, No. 18-3088 (6th Cir. Oct. 5, 2018).

The Meadowbrook Blvd. property was sold on March 18, 2019. The successful bid was $138,008.07 received from U.S. Bank. (U.S. Bank Mot. To Dismiss, Doc. No. 26-3 at PageID #: 332). U.S. Bank assigned its winning bid to Federal National Mortgage. Because U.S. Bank held the judgment in the case, it did not have to pay the full purchase price to the Master Commissioner. *Id.* (U.S. Bank Mot. To Dismiss, Doc. No. 26-3 at PageID #: 333). Instead, US Bank was only required to pay the difference between the purchase price and the amount owed to them on the foreclosure judgment. *Id.* (U.S. Bank Mot. To Dismiss, Doc. No. 26-3 at PageID #: 333). The Court confirmed the sale on July 11, 2019. *Id.* (Foreclosure Action, Doc. No. 115). There were no remaining proceeds after the payment of the foreclosure judgment to the first lienholder. (U.S. Bank Mot. To Dismiss, Doc. No. 26-3). The other creditors, including the United States, did not receive funds from the sale of the Meadowbrook Blvd. property.[1] (Fed. Defendants' Mot. To Dismiss, Doc. No. 23-1 at PageID #: 211). The Court ordered the Master Commissioner to convey the property to Federal National Mortgage free and clear of all liens and encumbrances. (U.S. Bank Mot. To Dismiss, Doc. No. 26-3 at PageID #: 333). Although Plaintiff appealed the foreclosure judgement, he did not appeal the confirmation of the sale. After receiving clear title, Federal National Mortgage transferred the property to the Cuyahoga County Land Bank for the sum of $ 60,000.00. (Land Bank's Mot. To Dismiss, Doc. No. 22 at PageID #: 181, FN 1).

---

[1] In addition to the lien placed on the property by the United States, the property had liens placed in it by Joanne Viola in the amount of $ 80,000.00, the State of Ohio Department of Taxation in the amount of $3,172.99, plus interest and costs, Citibank in the amount of $5,941.42, plus interest and costs, Chase Bank USA, N.A in the amount of $7,728.99, plus interest and costs, Capital One in the amount of $1,436.31, plus interest and costs, a federal tax lien in the amount of $26,842.23, and the Cuyahoga County Clerk of Court in the amounts of $163.50, $137.50, and $347.00, plus interest and costs. (Defendant's Mot. To Dismiss, Doc. 26-3).

Plaintiff has now filed this action disputing the foreclosure sale and its effect, or lack thereof, on the remaining balance of his restitution obligation. He states that the judge in his criminal case ordered restitution to be paid jointly and severally. He claims that in state court proceedings, one of his federal court co-defendants agreed to pay $ 1,000,000.00 in restitution to the same victims as those in the federal case. He contends two other federal co-defendants were subject to state restitution orders and made payments to the same victims that were victims in the federal criminal proceedings. (Doc. No. 1 at PageID #: 5-7). He contends that if all of these restitution payments in the state and federal cases are added together, they far exceed the amount of the lien placed on the Meadowbrook Blvd. property. (Doc. No. 1 at PageID #:7). Plaintiff further contends that the amount owed on the mortgage was approximately $ 61,400.00 He alleges that estimates on the value of the house place it at approximately $ 200,000.00. (Doc. No. 1 at PageID #: 7-8). He contends he has not received any proceeds from the sale, an accounting for the distribution of sales proceeds, or credit towards his restitution obligation if any portion of his restitution obligations remains after crediting his co-defendants' payments. (Doc No. 1 at PageID #:8).

Plaintiff asserts five causes of action in his Complaint. First, he claims Ohio Revised Code § 2329.44 specifies the order in which the funds from a foreclosure sale are applied. He claims the Defendants did not comply with these statutory requirements. (Doc. No. 1 at PageID #: 8). Second, he claims the DOJ failed to properly account for funds paid to victims by co-defendants and failed to take that into consideration when placing a lien on the real property making them liable for conversion. (Doc. No. 1 at PageID #: 9). Third, he claims the government seized the Meadowbrook property through a series of deed assignments without crediting his restitution or remitting the balance to him. He states it was not the subject of a

5

forfeiture order and he should be compensated for the amount of the sale over the amount owed on the mortgage. (Doc. No. 1 at PageID #: 9). Fourth, he contends that the Cuyahoga County Land Bank was unjustly enriched with the transfer of the property to them by Federal National Mortgage. (Doc. No. 1 at PageID #: 10). Fifth, he claims the DOJ placed a lien on the Meadowbrook Blvd. property knowing that restitution had been satisfied by his co-defendants through payments made to the victims in their state cases. He contends this was a fraudulent conveyance. (Doc. No. 1 at PageID #: 11). Finally, he claims that 18 U.S.C. § 3613 makes an order of restitution a lien in favor of the United States as if the person fined were liable for a tax assessed under the Internal Revenue Code. The lien begins to operate on the date of the judgment entry and continues for twenty years or until the liability is satisfied. He claims this creates an affirmative obligation on the DOJ to provide him with a pay-off amount for its lien on the Meadowbrook Blvd. property. (Doc. No. 1 at PageID #: 11). He asks this Court to void the transfer of the real property to the Cuyahoga County Land Bank, void the sale of the property in the foreclosure, and quiet title to the property to him. (Doc. No. 1 at Page ID #:12).

The Defendants filed Motions to Dismiss. (Doc. Nos. 12, 20, 22, 23, 26). The Cuyahoga County Land Bank, Master Commissioner DeSanto, US Bank, and Federal National Mortgage claim that this action is barred by *res judicata*. They assert that the foreclosure action already determined the issue of title to the property when the Court confirmed the sale and Plaintiff cannot bring claims which seek to relitigate that issue. (Doc. No. 12 at PageID #: 107, Doc. No. 20 at PageID #: 167, Doc. No. 22 at PageID #: 188, Doc No. 23 at PageID #: 219, Doc No. 26 at PageID #: 260). Furthermore, they each claim Plaintiff failed to state a claim upon which relief may be granted. They assert that Plaintiff's First, Second, Third, Fourth and Sixth claims fail because there were no surplus funds from the sale. (Doc. No. 12 at PageID #: 112, Doc.

6

No. 20 at PageID #: 164, Doc. No. 22 at PageID #: 182, Doc No. 26 at PageID #: 262). DeSanto, the Cuyahoga County Land Bank, Federal National Mortgage, and US Bank all claim they have no connection to Plaintiff's restitution claims. (Doc. No. 12 at PageID #: 117, Doc. No. 20 at PageID #: 168, Doc. No. 22 at PageID #: 189, Doc No. 26 at PageID #: 263). All Defendants except the Land Bank claim neither they nor Plaintiff have a current interest in the property and therefore Plaintiff lacks standing or fails to state a claim against them to quiet title. (Doc. No. 12 at PageID #: 116, Doc. No. 20 at PageID #: 168, Doc. No. 22 at PageID #: 222, Doc. No. 23 at PageID #: 217, Doc No. 26 at PageID #: 263). In addition, the Federal Defendants assert they are entitled to sovereign immunity (Doc No. 23 at PageID #: 217-224). They also contend there is no private right of action under 18 U.S.C. § 3613. (Doc. No. 23 at PageID #: 225).

In addition, the Federal Defendants filed a Motion to Declare Plaintiff to be a Vexatious Litigant. (Doc. No. 24). They contend Plaintiff has a history of filing frivolous civil laws suits and motions attacking his conviction and sentence, attacking the restitution order in his criminal case, and harassing the Assistant United States Attorneys who represented the government in his criminal case. They list seven such cases in their Motion all of which have been dismissed. (Doc. No. 24-1 at PageID #: 237).

Plaintiff responded by asking this Court to dismiss this action without prejudice, claiming he intends to refile the case with the help of counsel he is hoping to retain. (Doc No. 28 at PageID #: 339). He also filed a Motion to Hold the Defendant's Motion to declare him to be a vexatious litigant in abeyance. (Doc. No. 29) He contends the Western District of Pennsylvania did not find his civil suit pertaining to his Freedom of Information Act request to be frivolous. (Doc. No. 29 at PageID #: 349-350).

7

Plaintiff's Motions (Doc Nos. 28 and 29) are not well-taken. First, Plaintiff has given no explanation for why he could not and has not retained counsel in this action. He has had ample opportunity to consult with counsel about these matters. His restitution order was imposed in 2012. The foreclosure judgment was granted in 2017 and the sale was confirmed in 2019. He filed this action in June 2021. The Defendants have all incurred costs to file fully briefed Motions to Dismiss. There is no reason this Court should dismiss this case to allow Plaintiff to refile it and start this process over again. Furthermore, there is no need to hold a decision on the Motion to declare him to be a vexatious litigant in abeyance. Whether Plaintiff has filed non-frivolous actions in other courts is irrelevant to the determination of whether he has filed repetitive frivolous or harassing actions in this District Court. Plaintiff's Motions (Doc. Nos. 28 and 29) are denied.

### STANDARD OF REVIEW

When deciding a Motion to Dismiss under Federal Civil Rule 12(b)(6), the function of the Court is to test the legal sufficiency of the Complaint. *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993). The Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and recently in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009) clarified the law regarding what the Plaintiff must plead in order to survive a Motion to Dismiss under Rule 12(b)(6).

When determining whether the Plaintiff has stated a claim upon which relief can be granted, the Court must construe the Complaint in the light most favorable to the Plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555. The Plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. Although a Complaint need not

contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id*. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The Court in *Iqbal*, 556 U.S. at 677-78, further explains the "plausibility" requirement, stating that "a claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Furthermore, "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The Sixth Circuit has held that a court may consider allegations contained in the Complaint, as well as exhibits attached to or otherwise incorporated in the Complaint, all without converting a Motion to Dismiss to a Motion for Summary Judgment. FED. R. CIV. P. 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

### DISCUSSION

As an initial matter, the relief of quiet title Plaintiff seeks is unrelated to his allegations and legal claims challenging the manner in which restitution in his criminal case is credited and challenging the distribution of money from the sale of his house in foreclosure. He does not seek monetary damages for the money he contends he is owed. Instead, he seeks reversal of the sale in the foreclosure case and return of title of the house. He does not dispute the foreclosure itself, or the sale of the property in foreclosure. He does not argue he is still the rightful owner of the property after the foreclosure sale. He does not explain why he believes this Court should quiet title to the property to him.

Furthermore, Plaintiff fails to state a claim upon which relief may be granted. His six claims for relief fall into two categories: (1) those that are based on his theory that the surplus from the sale should have gone to him or to satisfy the government's lien (First, Third, and Sixth causes of action); and (2) those that challenge the way in which the government credits payments toward his restitution obligation in his federal criminal case (Second, Fourth, Fifth and Sixth causes of action). Both of these types of claims are barred by *res judicata*.

The doctrine of *res judicata* dictates that a final judgment on the merits of a claim or issue precludes a party from bringing a subsequent lawsuit on the same claim or issue or from raising a new defense to defeat the prior judgment. *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 660 (6th Cir. 1990). It bars relitigation of every issue actually brought before the court and every issue or defense that should have been raised in the previous action. *Id*. The purpose of this doctrine is to promote the finality of judgments and thereby increase certainty, discourage multiple litigation, and conserve judicial resources. *Westwood Chemical Co. v. Kulick*, 656 F.2d 1224, 1229 (6th Cir. 1981). A subsequent action will be subject to a *res judicata* bar only if there is an identity of the facts creating the right of action and of the evidence necessary to sustain each action.

Both of these requirements are met in this case. The issue of the distribution of proceeds from the sale of his home in foreclosure was determined by the court in his foreclosure case when it issued the Order confirming the sale. Based on that Order, there were no surplus funds from the sale after the judgment on the priority lien was satisfied. That issue cannot be relitigated. The issue of ownership of the property was also resolved by the Order confirming the sale and cannot be relitigated. This Court cannot revisit that issue and order the title to the property to issue to Plaintiff. Similarly, the issue of whether Plaintiff's co-defendants should receive credit on their

federal restitution obligations for payments they made toward their state court restitution orders is an issue that could and should have been raised in their criminal cases at sentencing, on direct appeal, or in a properly filed post-conviction motion. This Court cannot interfere in Plaintiff's or his co-defendants' criminal cases or entertain an issue that could and should have been litigated in those actions.

Moreover, even if these claims were not barred by *res judicata*, Plaintiff lacks standing to raise an unjust enrichment claim against the Cuyahoga County Land Bank. To have standing to assert a claim, the Plaintiff must allege facts demonstrating he has a personal stake in the outcome of the controversy. *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Federal National Mortgage purchased the property at the foreclosure sale. They then sold or transferred the property to the Cuyahoga County Land Bank. Plaintiff no longer had an ownership interest in the property at that point and was not a party to the transaction. He therefore lacks standing to assert a challenge to the terms of the transfer or to sale price.

Similarly, Plaintiff lacks standing to assert that his co-defendants' state court restitution payments also should be credited against their federal court restitution obligations. This assertion is the basis for his Second, Fourth, Fifth and Sixth causes of action. A party must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties. *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *Allstate Insurance Co. v. Wayne County*, 760 F.2d 689, 693 (6th Cir. 1985). Although Plaintiff would also benefit from any credit his co-defendants' receive toward their federal restitution obligations, the fact that he may be collaterally affected by the adjudication of his co-defendants' rights does not necessarily extend the Court's Article III powers to him. *Allstate Insurance Co.*, 760 F.2d at 692.

Furthermore, even if Plaintiff could overcome the fatal bars of *res judicata* and standing to raise these challenges, he has not identified a civil cause of action against these Defendants that would entitle him to relief. Assuming that there is a private right of action under Ohio Revised Code § 2329.44 pertaining to the order in which liens are paid from foreclosure sale surplus after the judgment is satisfied, Plaintiff has not alleged facts suggesting any of these Defendants can be held liable. There was no surplus of funds after the judgment was satisfied. Moreover, none of the Defendants except DeSanto was arguably responsible for prioritizing payment of liens if a surplus had existed. Plaintiff's First cause of action is without merit.

The Second, Third, Fifth and Sixth causes of action are asserted only against the Federal Government Defendants. The Second and Fifth causes of action assert tort claims. The Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 (the "FTCA"), provides the exclusive jurisdictional basis for tort claims against the United States and its employees for actions committed in the scope of their employment. The United States, as a sovereign, is immune from suit unless it explicitly waives its immunity. *United States v. Sherwood*, 312 U.S. 584, 590–91 (1941). By enacting the FTCA, Congress waived the United States' sovereign immunity under very limited circumstances for claims against the federal government arising from torts committed by federal employees who are acting within the scope of their employment. 28 U.S.C. §§ 1346(b)(1), 2679(d)(1); *United States v. Orleans*, 425 U.S. 807 (1976). Congress defined the exact terms and conditions upon which the government may be sued, and the terms of the United States' consent define the parameters of federal court jurisdiction to entertain suits brought against the United States. *United States v. Orleans*, 425 U.S. at 814; Honda v. Clark, 386 U.S. 484, 501 (1967).

The parameters placed on these tort claims dictate that they "shall forever be barred unless...presented in writing to the appropriate Federal agency within two years after such claim

12

accrues." 28 U.S.C. § 2401(b). The timely filing of an administrative claim is a requirement of the FTCA. If the administrative requirements of the FTCA have not been fulfilled, the case must be dismissed. *Dolan v. United States*, 514 F.3d 587, 593 (6th Cir. 2008). This Court cannot extend the waiver of immunity beyond what Congress intended. *United States v. Kubrick*, 444 U.S. 111, 118 (1979). Because § 2401(b) is a condition of the United States' waiver of immunity, it must be interpreted solely by reference to federal law. There is no suggestion that Plaintiff timely filed administrative claims with respect to his conversion or fraudulent conveyance claims. Absent that showing, those claims must be dismissed.

Plaintiff's Third cause of action does not clearly identify a legal claim. He states incomprehensibly that he was never the subject of a forfeiture order and that the property was not sold on the open market. He states the Land Bank received property worth nearly $ 200,000.00 and therefore the transactions amount to a seizure of property from the Plaintiff to the Land Bank without compensation in violation of the United States Constitution. The Court liberally construes this as a claim under the Fifth Amendment Takings Clause. Because the Takings Clause only applies to government action, and the FBI was not plausibly involved in the foreclosure sale, the claim could only be construed as asserted against the DOJ or Bennett.

Because the Constitution does not directly provide for relief, Plaintiff must proceed under one of the civil rights statutes which authorizes an award of damages for alleged constitutional violations. *Sanders v. Prentice-Hall Corp. Sys*, 178 F.3d 1296 (6th Cir. 1999). While 42 U.S.C. § 1983 provides a cause of action for civil rights violation committed by state government agencies and officers, Congress did not provide a corresponding statutory remedy for constitutional

violations committed by federal government agencies or employees. *Bivens*[2] provides a very limited cause of action against individual officers acting under color of federal law alleged to have acted unconstitutionally. *Correctional Services Corporation v. Malesko*, 534 U.S. 61, 70 (2001). It, however, does not support an action against the United States government or any of its agencies. *Id*; *see Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 484-86 (1994). The United States has not waived its sovereign immunity for civil rights claims against federal government agencies. He therefore cannot bring a civil rights claim against the DOJ.

Although Mark Bennett was an employee of the Department of Justice, Plaintiff has not alleged any facts that plausibly suggest that the Assistant United States Attorney that represented the government in his criminal case in 2012 was in any way involved in the foreclosure action or the sale of the property. Plaintiff failed to state a claim upon which relief may be granted against Bennett.

Plaintiff's Sixth cause of action seeks relief under 18 U.S.C. § 3613. That statute states in part:

> (a) Enforcement.--The United States may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law. Notwithstanding any other Federal law (including section 207 of the Social Security Act), a judgment imposing a fine may be enforced against all property or rights to property of the person fined,

18 U.S.C.A. § 3613(a). The order of restitution operates as a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986. 18 U.S.C.A. § 3613(c). Plaintiff contends that this statute creates a duty on the United States to provide him with an

---

[2] *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971)

accounting of restitution payments credited toward his sentence and provides him with a private right of action to enforce it.  A plain reading of this statute does not support either of those assertions.  There is nothing in the statute that creates an obligation on the United States or any of its agencies to provide Plaintiff with an accounting nor is there anything in the statute that suggests he can bring a claim in a civil action against the United States under this statute.  His Sixth cause of action fails to state a claim upon which relief may be granted.

Finally, Plaintiff's Fourth claim asserting unjust enrichment against the Cuyahoga County Land Bank is without merit.  Unjust enrichment occurs when: (1) a benefit is conferred by a Plaintiff upon a Defendant; (2) the Defendant has knowledge of that benefit; and (3) the Defendant retains the benefit under circumstances where it would be unjust to do so without payment.  *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984).  The Plaintiff, however, did not confer a benefit on the Land Bank.  The property had already been sold to Federal National Mortgage in the foreclosure action.  Plaintiff's interest in the property was terminated before the property was transferred or sold to the Land Bank.  Plaintiff fails to state a claim for relief for unjust enrichment.

The Defendants' Motions to Dismiss (Doc. Nos. 12, 20, 22, 23, 26) are granted.

The Court now turns its attention to the Federal Defendants' Motion to Declare Plaintiff a Vexatious Litigator (Doc. No. 24).  Defendants state that Plaintiff's repeated unsuccessful challenges to his conviction and sentence led the Court to declare him to be a vexatious litigant in his criminal case and to enjoin him from filing any further Motions or documents pertaining to his conviction and sentence in that action.  *See United States v. Viola*, No. 1:08 cr 506 (N.D. Ohio Sept. 1, 2017).  Plaintiff also filed multiple civil actions in which he challenged his conviction and sentence.  *See Viola v. Kasaris*, No. 2:16 CV 1036 (S.D. Ohio Mar. 27, 2017)(asserting claims

15

for prosecutorial misconduct); *U.S. Bank, N.A.*, No. 1:16 CV 969 (N.D. Ohio Dec. 1, 2016)(dismissing Plaintiff's counterclaim alleging prosecutorial misconduct); *Viola v. Bennett*, No. 1:17 CV 456 (N.D. Ohio May 22, 2017)(dismissing civil right action against AUSA Bennett); *Viola v. Blair*, No. 1:17 CV 827 (N.D. Ohio Aug. 7, 2017)(dismissing civil rights action challenging restitution imposed in his criminal case); *Viola v. Ohio Attorney General*, No. 20 CV 765 (N.D. Ohio Feb. 11, 2021)(dismissing claims that his federal conviction was obtained by prosecutorial misconduct). In the latter case, the federal Defendants filed a Motion seeking to have Plaintiff declared to be a vexatious litigator. The Court recognized that the "four civil lawsuits (coupled with the numerous post-judgment motions and petitions filed in his federal criminal case) have placed Viola in a precarious situation. Upon review of Viola's various filings, this Court would be well within its power, should it choose, to declare him to be a harassing and vexatious litigator and subsequently impose prefiling restrictions." *Id*. The Court denied the Motion; however, stating that Plaintiff had not been warned that his repeated filings could lead to him being enjoined from future filings. The Court then warned him that if he continued to file repetitive frivolous actions, he would be enjoined.

Undeterred, Plaintiff filed *Viola v. United States Probation Office*, No. 1:20 CV 2194 (N.D. Ohio Feb 4, 2021) (Pet. For Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241). Once again, he claimed prosecutorial misconduct in his federal criminal conviction. He also filed *Viola v. Dep't of Justice*, No. 1:21 CV 1462 (D.D.C. filed May 27, 2021) asserting prosecutorial misconduct in his federal prosecution.

The Defendants allege Plaintiff also threatened Bennett with additional legal actions through email. In one email to Bennett, dated June 17, 2021, Plaintiff promises a series of new lawsuits naming him as a Defendant. (Doc. No. 24-1 at PageID #: 241). In another email to

16

Bennett dated July 23, 2021, Plaintiff states that he is working on a new civil rights case against him alleging a criminal conspiracy. (Doc. No. 24-1 at PageID #: 242). Plaintiff has now filed this action. Although he is not directly attacking his conviction or sentence, he did collaterally attack his restitution order despite his unsuccessful attempts to assert those same claims in prior actions.

It is apparent that despite this Court's warning, Plaintiff intends to continue to file frivolous pleadings to challenge his conviction and sentence and to harass individuals that participated in his prosecution. Up to this point, the Courts in this District have been tolerant of Plaintiff's *pro se* filings; however, there comes a point when we can no longer allow Plaintiff to misuse the judicial system. The filing of frivolous lawsuits and motions strains an already burdened federal judiciary. "Every paper filed with the Clerk of ... Court, no matter how repetitious or frivolous, requires some portion of the [Court's] limited resources. A part of the Court's responsibility is to see that these resources are allocated in a way that promotes the interests of justice." *In re McDonald*, 489 U.S. 180, 184 (1989). Our ability to perform our duties is compromised when we are forced to devote limited resources to the processing of repetitious and frivolous filings. *In re Sindram*, 498 U.S. 177, 179-80 (1991).

After a careful review of Plaintiff's conduct in this and other cases filed in the Northern District of Ohio, this Court has determined that it is necessary to impose some restrictions on Plaintiff's ability to continue on in this manner. Federal courts have both the inherent power and constitutional obligation to protect their jurisdiction from conduct which impairs the ability to carry out Article III functions. *Procup v. Strickland*, 792 F.2d 1069, 1073 (11th Cir. 1986). To achieve these ends, the United States Court of Appeals for the Sixth Circuit has approved enjoining vexatious and harassing litigants by requiring them to obtain leave of court before submitting additional filings. *Filipas v. Lemons*, 835 F.2d 1145 (6th Cir. 1987); *Wrenn v. Vanderbilt Univ.*

17

*Hosp.*, Nos. 94-5453, 94-5593, 1995 WL 111480 (6th Cir. Mar. 15, 1995) (authorizing a court to enjoin harassing litigation under its inherent authority and the All Writs Act, 28 U.S.C. § 1651(a)(citations omitted)).

Accordingly, Defendants' Motion to Declare Plaintiff to be a Vexatious Litigator (Doc. No. 24) is granted. Plaintiff is permanently enjoined from filing any new lawsuits or other documents without first seeking and obtaining leave of court from the Chief Judge or the Miscellaneous Duty Judge in accordance with the following:

1. He must file a "Motion Pursuant to Court Order Seeking Leave to File" with any document he proposes to file, and he must attach a copy of this Order to it (any such Motion should be filed as a miscellaneous case).

2. As an exhibit to any Motion seeking such leave, he must also attach a declaration which has been prepared pursuant to 28 U.S.C. § 1746 or a sworn affidavit certifying that (1) the document raises a new issue which has never been previously raised by him in this or any other court, (2) the claim or issue is not frivolous, and (3) the document is not filed in bad faith.

3. By means of a second exhibit, he must identify and list: (a) the full caption of each and every suit which has been previously filed by him or on his behalf in any court against each and every defendant in any new suit he wishes to file, and (b) the full caption of each and every suit which he has currently pending.

4. As a third exhibit to the Motion, he must provide a copy of each Complaint identified and listed in accordance with the foregoing paragraph 3 and a certified record of its disposition.

The Court may deny any Motion for leave to file if the proposed document is frivolous, vexatious or harassing. If the Motion is denied, the document shall not be filed. Further, Plaintiff's failure to comply fully with the terms of this Order shall be sufficient ground for this Court to deny

any Motion for leave to file and may be considered an act of contempt for which he may be punished accordingly.

Further, to prevent future harassment by Plaintiff and the waste of this Court's limited resources, the Clerk's Office is hereby ordered as follows:

(1) Any document submitted by Plaintiff prior to him obtaining leave to file shall not be filed unless it is specifically identified as a "Motion Pursuant to Court Order Seeking Leave to File," and unless it contains: 1) an affidavit or sworn declaration as required by this order; 2) a copy of this Memorandum of Opinion; and 3) the exhibits required by this Memorandum of Opinion.

(2) The Clerk's Office shall not accept any filing fees, cover sheets, *in forma pauperis* applications, summonses, or U.S. Marshal Forms, in connection with any Motion Pursuant to Court Order Seeking Leave to File which Plaintiff files, unless and until leave is granted.

**CONCLUSION**

Accordingly, Defendants Motions to Dismiss (Doc. Nos. 12, 20, 22, 23, 26) are granted, Plaintiff's Motion to Dismiss (Doc. No. 28) and his Motion to Hold in Abeyance (Doc. No. 29) are denied and this action is dismissed with prejudice. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith. Furthermore, Defendants' Motion to Declare Plaintiff a Vexatious Litigator (Doc. No. 24) is granted. Plaintiff is enjoined from filing any additional actions in this Court without first seeking and obtaining leave of Court as provided in this Memorandum of Opinion an Order.

**IT IS SO ORDERED.**

      *s/Pamela A. Barker*
      PAMELA A. BARKER
Date: 10/28/2021      U. S. DISTRICT JUDGE